UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**SIMA/SIGNATURE LAKE, L.P. (doing business
as Signature Lake Apartments), ADJOR ASSOCIATES,
L. P. (doing business as Sandcastle Apartments) and
D.E.L. PROPERTY MANAGEMENT, INC**                                                      **PLAINTIFFS**

**V.**                                                           **CIVIL ACTION NO.1:06CV186 LTS-RHW**

**CERTAIN UNDERWRITERS AT LLOYDS LONDON**                        **DEFENDANTS**


### MEMORANDUM OPINION

The Court has before it Plaintiffs Sima/Signature Lake, L.P. (Signature Lake), Adjor Associates, L.P. (Sandcastle) and D.E.L. Property Management, Inc.'s (DEL) motion [17] for partial summary judgment or, in the alternative, [18] for a declaratory judgment to determine the proper interpretation and effect of two provisions in an insurance policy issued by Defendant Certain Underwriters at Lloyds London (Lloyds). For the reasons set out below, these motions will be granted.

Sandcastle and Signature Lake separately own two apartment buildings that were damaged in Hurricane Katrina. DEL is the named insured under a policy issued by Lloyds covering these apartment buildings. The limits of liability under the Lloyds policy totals $4.9746 million for both buildings. The Lloyds policy excludes flood damage. Lloyds has paid $1.470516 million of its wind coverage. The plaintiffs obtained separate flood insurance totaling $4.3785 million, and the plaintiffs have collected the policy limits of this flood insurance coverage.

A summary of the respective coverages and payments is reflected in the following table:

| Insured Property | Flood Coverage Limits | Flood Insurance Payment | Wind (Lloyds) Coverage Limits | Wind (Lloyds) Insurance Payments | Total Insurance Collected to Date |
|---|---|---|---|---|---|
| Signature Lake | $3.3785 Million | $3.3785 Million | $3.5 Million | $.979953 Million | $4.358453 Million |
| Sandcastle | $1 Million | $1 Million | $1.4746 Million | $.490563 Million | $1.490563 Million |

The pending motions seek an interpretation of two provisions in the Lloyds policy relating to "Other Insurance." These policy provisions state:

> 1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Liability under this Coverage Part bears to the Limits of Insurance of all insurance coverage on the same basis.
>
> 2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56. A declaratory judgment under F.R.Civ.P. 57 is intended to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." See 28 U.S.C. §2201.

The interpretation of these two policy provisions is a pure, and very narrow, question of law, appropriate for summary adjudication and for the granting of declaratory relief. In my view, the sole issue before me is the effect of these two policy provisions on the limits of liability stated in the Lloyds policy. The question of valuation and the effect of payments made to the plaintiffs by their flood insurers have no bearing on this narrow issue. My conclusion is that these policy provisions do not affect the limits of liability under the Lloyds policy.

I find that the two provisions in the Lloyds policy set out above are ambiguous at best. These provisions can and must be read and interpreted in favor of the plaintiffs. See *Universal Underwriters Insurance Co. v. Buddy Jones Ford, Lincoln-Mercury, Inc.*, 734 So.2d 173, 176-77 (Miss.1999); *Southern Home Insurance Co. v. Wall*, 127 So. 298, 299 (Miss.1930).

The first provision, by its terms, allows a proration of coverage only for "other insurance subject to the same plan, terms, conditions and provisions" as the Lloyds policy. The flood policy has terms, conditions, and provisions different from the Lloyds policy. For this reason, the limits of liability under the Lloyds policy cannot be prorated with the limits of liability under the plaintiffs' flood policy.

The second provision allows an offset of coverage only "If there is other insurance covering the same loss or damage." The flood policy covers different losses and different damages, i.e. losses attributable to water damage. This type of loss and damage is excluded under the Lloyds policy. For this reason, the limits of liability under the Lloyds policy cannot be offset or reduced by the limits of liability under the plaintiffs' flood policy.

Thus it is my conclusion that these two provisions in the Lloyds policy do not entitle Lloyds to a proration or an offset of the amount of coverage, i.e. the limits of liability, provided by the Lloyds policy. The limits of coverage under the Lloyds policy are set out in the Lloyds policy's declarations sheet, and these limits are not affected by the plaintiffs' flood insurance coverage.

This is not to say that Lloyds is obligated to pay for anything other than wind damage or for damage for which the plaintiffs have already been compensated. The question whether the plaintiffs may collect additional benefits under the Lloyds policy will depend on the evidence, particularly the evidence that establishes the extent of the covered wind damage that has not yet been paid, the evidence that establishes the total value of the insured property, and the evidence that establishes the actual loss the plaintiffs have sustained by damage to and destruction of the insured property.

Subject to the exception of a valued fire insurance policy, an exception that does not apply to the policies at issue in this case, a policyholder's right to recover insurance proceeds is always limited, by the indemnity principal, to his actual covered losses. *Tejedor v. State Farm Fire and Casualty Company*, Civil Action No. 1:05cv679; *Gemmill v. State Farm Fire and Casualty Company*, Civil Action No. 1:05cv692.

Where one insurer, in this instance the flood insurer, has settled an insured's claim by paying policy limits, the insured may be estopped from recharacterizing, as wind damage, losses for which he has accepted flood insurance compensation. But this is a different issue entirely, and it is an issue that arises without reference to the "other insurance" clauses in the Lloyds policies.

The question of the amount of the plaintiffs' total loss is not presently before the Court. While there is substantial evidence in the record concerning the proper evaluation of the plaintiffs' total losses, i.e. the statement of values submitted by the plaintiffs as part of their insurance application to Lloyds, the plaintiffs have not yet had a full and fair opportunity to submit their own evidence on this issue. Nor has Lloyds established, as a matter of law, that the plaintiffs' statement of values is legally binding for all purposes. While it certainly appears to me that this statement of values is, in evidentiary terms, an admission or a statement against interest, the question whether these statements are conclusive on the issue of value is not before me at this time, and it is not a question I am prepared to decide as part of the pending motions for partial summary judgment or for declaratory judgment.

I therefore express no opinion on this question of fact (the value of the apartment buildings representing the actual loss the plaintiffs have sustained from both flood damage and wind damage) or on this issue of law (whether the plaintiffs' statement of values is conclusive on this point).

Either or both of the parties are free, of course, to raise these issues by a properly supported motion for partial summary judgment or by a cross motion for partial summary judgment. If Lloyds can prove, as a matter of fact, that the statement of values accurately reflects the total value of the insured property, or that, as a matter of law, the plaintiffs are bound, under a valid legal theory, by this statement of values, the upper limit of the plaintiffs' total recovery would be established as the sum reflected in the statement of values. If the plaintiffs can prove, as a matter of fact, that their statement of values understates the true value of the insured property and that, as a matter of law, they are not conclusively bound by their statement of values, a different total value may be found to represent the plaintiffs' total losses. But until these issues are decided, there is no undisputed valuation which the Court may use to apply the principal of indemnity.

Accordingly, the plaintiffs' motion [17] for partial summary judgment and the plaintiffs' motion [18] for a declaratory judgment will be **GRANTED**, and the "other insurance" provisions of the Lloyds policy will be declared to have no effect on the limits of liability provided by the terms of the Lloyds policy. An appropriate order will be entered.

**DECIDED** this 6th day of December, 2006.

s/ *L. T. Senter, Jr.*
L. T. Senter, Jr.
Senior Judge